IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JASON DUMAINE OWENS, ) | CIVIL ACTION NO. 9:15-4830-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied Disability Insurance Benefits (DIB). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for DIB on February 6, 2012, alleging disability beginning January 4, 2012, due to multiple sclerosis, nerve damage, and a bulging disc in his back. (R.pp. 38, 150, 192). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 10, 2014. (R.pp. 54-79). The ALJ thereafter denied Plaintiff's claim in a decision issued April 29, 2014. (R.pp. 38-49). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).



Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for entry of a decision fully favorable to him, or alternatively, that the case be remanded for further administrative proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial



proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Medical Records**

Plaintiff's medical records reflect that In October 2008, more than three years prior to his alleged onset of disability, Plaintiff underwent physical therapy at Carolina Hand Therapy on referral from Dr. Jerold Buckaloo for a crush injury to his right hand which had been sustained at work. Plaintiff reported difficulty using his right hand for writing and opening bottles, and claimed he was unable to do work-related tasks due to pain and joint stiffness. (R.pp. 398-399, see R.pp. 259-402). On October 21, 2008, a physical therapist reported that while the wound was fully healed, Plaintiff was still experiencing severe hypersensitivity in his right hand with very limited range of motion secondary to joint stiffness. (R.p. 393). In November 2008, it was noted that Plaintiff's goals in physical therapy had only been partially met. (R.p. 380).

On April 24, 2009, Dr. Buckaloo noted that Plaintiff had been seen by a "Dr. McFadden", who agreed that a diagnosis of reflex sympathetic dystrophy (RSD) was appropriate as to Plaintiff's right hand. Dr. Buckaloo opined that Plaintiff had reached maximum medical improvement and assigned a 25% permanent impairment rating to Plaintiff's dominant right upper extremity based on the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition, under the category for Moderate Severe Complex Regional Pain Syndrome. Dr. Buckaloo recommended work restrictions for Plaintiff of no lifting of greater than five pounds with his right hand. (R.p. 472).



On February 8, 2011, Plaintiff was treated for right hand pain by Dr. Joseph Nolan at Trident Pain Center. Dr. Nolan assessed Plaintiff with RSD and upper limb and muscle spasm, and advised Plaintiff to continue taking Percocet and Lyrica. (R.pp. 409-410). On June 2, 2011, Dr. Nolan conducted a physical examination which showed that Plaintiff was oriented times three, his short and long term memory were intact, coordination was normal, muscle strength was grossly intact in his bilateral upper extremities, and tone was normal, although there was moderate to severe cervical radiculitis pain with range of motion in the right C4, C5, C6, and C7 nerve distribution to Plaintiff's hand with associated numbness and tingling. (R.pp. 417-418). Thereafter, Dr. Nolan last saw Plaintiff on August 10, 2011, at which time Plaintiff complained of 8/10 wrist and knee pain. Examination revealed normal coordination, grossly intact muscle strength in Plaintiff's bilateral upper extremities, and normal tone, and Dr. Nolan opined that Plaintiff was experiencing mild to moderate cervical radiculitis pain with range of motion in the right C6, C7 nerve distribution to Plaintiff's hand with associated numbness and tingling. Dr. Nolan also noted that they would no longer prescribe narcotics for Plaintiff. (R.pp. 421-422).

On October 28, 2011, Plaintiff was seen at Charleston Neurosurgical Associates for complaints of headaches and dysesthesias of his right upper extremity. Based on the findings from a recent MRI, Plaintiff was assessed with spinal cord inflammatory process of increased T2 signal in his thoracic cord near T5 and T8, as well as T2 signal in his cervical spine at C3 to C5. It was recommended that he undergo an MRI of his brain, cervical spine, and thoracic spine for comparison with prior studies, and that he be seen by neurologist Dr. Hamid Bahadori. (R.p. 428). On November 7, 2011, Plaintiff complained to Dr. Bahadori that he experienced daily severe frontal headaches with a throbbing and pounding quality, and that he was bothered by light and noise. Dr. Bahadori



indicated that Plaintiff's cervical spine MRI revealed abnormalities that might indicate an inflammatory process such as multiple sclerosis, and that the MRI of Plaintiff's thoracic spine also revealed abnormal findings. (R.pp. 441-443). In a followup appointment at Charleston Neurological Associates on November 15, 2011, it was reported that Plaintiff had seen Dr. Bahadori and that there was concern that Plaintiff might have a demyelinating disorder such as multiple sclerosis. Plaintiff's headaches reportedly were better controlled on the medications prescribed by Dr. Bahadori. (R.p. 430).

On January 4, 2012 (the date Plaintiff alleges is when his impairments became disabling), Plaintiff reported that he had been experiencing intermittent numbness in his right hand and right leg for several years. Dr. Bahadori noted that Plaintiff's December 2011 head MRI showed abnormalities consistent with multiple sclerosis. (R.pp. 463-464). On January 12, 2012, Plaintiff reported no numbness, but that he was experiencing weakness in his legs, significant fatigue, and insomnia. Dr. Bahadori prescribed Avonex. (R.pp. 461-462).

On August 1, 2012, Plaintiff underwent a consultative orthopedic examination with Dr. Adebola Rojugbokan of Prime Care Family Practice. X-rays of Plaintiff's lumbar spine taken that day were noted to be unremarkable. (R.p. 445). Plaintiff reported sharp pain in his right shoulder, left ankle, and both knees, and numbness and tingling in his fingers. He was assessed with multiple sclerosis, status post right finger injury, nerve damage, and lower back pain. Dr. Rojugbokan opined that Plaintiff's multiple sclerosis and surgery to his hand would affect his "ability to keep or maintain any kind of employment." (R.pp. 447-454).

On August 6, 2012, Plaintiff reported he had had a skin reaction from taking Avonex, and this medication was discontinued and was replaced by Betaseron (for which Plaintiff reported



side effects of two spots on his skin, but no problems otherwise). Plaintiff reported experiencing significant fatigue, pain in his back and legs, and forgetfulness. Dr. Bahadori assessed Plaintiff with multiple sclerosis, insomnia, fatigue, and depression, and added a prescription for Elavil. (R.pp. 459-460).

On August 10, 2012, state agency physician Dr. Cleve Hutson opined that Plaintiff did not have any severe impairment. (R.pp. 87-93).

On December 14, 2012, Plaintiff complained of changes in his vision, dizziness, and unsteady balance. Examination revealed that Plaintiff limped on his right side but had no left-sided weakness, and that he had -5/5 strength on his right side upper and lower extremities with normal tone, normal deep tendon reflexes, and intact coordination. Dr. Bahadori noted that Plaintiff was experiencing a lot of side effects from Betaseron, discussed medication changes, and prescribed Plaintiff Percocet for pain and Adderall for fatigue. (R.pp. 580-581).

On December 28, 2012, an MRI of Plaintiff's lumbar spine showed no disc herniation, only mild canal stenosis at L3/4 and to a lesser degree at L4/5, canal narrowing at L2/3, moderate foraminal narrowing at L4/5 and L3/4, and mild-to-moderate foraminal narrowing at L2/3 and L5/S1. (R.pp. 457-458).

On January 7, 2013, State agency physician Dr. Tom Brown concluded, inter alia, that there was insufficient evidence to evaluate Plaintiff's claim, and determined that Plaintiff was "not disabled". (R.pp. 96-104).

On May 2, 2013, Plaintiff reported to Dr. Bahadori that he was not doing well with weakness in his legs, falling when his legs gave out, visual spots interfering with his ability to see, and tingling in his hands causing him to drop objects. Plaintiff reported experiencing a great deal of



pain and that he had run out of pain medication due to financial problems. He reportedly smoked cigarettes daily. Dr. Bahadori noted that Plaintiff's December 2012 MRI showed more lesions such that an MRI should be repeated. (R.pp. 582-583). On May 14, 2013, a brain MRI showed stable findings of multiple sclerosis without change in the number and extent of white matter lesions. (R.p. 585).

On June 7, 2013, Plaintiff was seen at the Charleston VA Medical Center (VA) to establish treatment with a primary care physician. Plaintiff reported that he had been diagnosed with multiple sclerosis for which he was seeing Dr. Bahadori, had a crush injury to his right arm and could not lift over five pounds with his right arm, that he experienced constant back pain, had fallen when his knees gave out, and took Percocet 10 mg. twice a day. An examination revealed weakness on Plaintiff's right side, reduced (3/5) right upper extremity strength, and diminished (4/5) bilateral knee strength, a normal gait, and normal balance. Plaintiff was assessed with multiple sclerosis, paresthesia in his right upper extremity and knees, chronic back pain, and depression. (R.pp. 533-539). On July 9, 2013, it was noted at the VA that Plaintiff was a newly identified multiple sclerosis veteran, that he reported taking Betaseron for his disease, and that his most recent MRI showed spots on his brain. (R.pp. 543-544).

On July 22, 2013, Plaintiff underwent a disability evaluation at the VA. He was noted to have an abnormal gait characterized by a right-sided limp; 5/5 (full) strength throughout except for 4/5 strength in hip extension, hip flexion, knee extension, ankle planter flexion, and ankle dorsiflexion; no muscle atrophy; no weakness in his bilateral upper extremities; and only mild muscle weakness in his bilateral lower extremities. (R.pp. 554-578). In a "Multiple Sclerosis Disability Questionnaire," a VA provider opined that Plaintiff's multiple sclerosis impacted his ability to work



in that he could "no longer tolerate walking for long distance or standing for long periods of time, suffers from insomnia and daily fatigue." (R.p. 578).

On July 24, 2013, Dr. Bahadori noted that Plaintiff was still experiencing Betaseron side effects including flu-like symptoms, joint pain, and injection site pain. Plaintiff reported experiencing pain, fatigue, and tiredness with lots of break-through pain despite taking Percocet twice daily. Dr. Bahadori thought that, due to a worsening of Plaintiff's symptoms, including left eye blurriness and right-sided weakness, repeat MRIs of Plaintiff's brain and lumbar spine should be considered. He also stated he would start Plaintiff on Amantadine and, because of financial hardship, Plaintiff would call back in four to six weeks for follow up. (R.p. 588).

On October 10, 2013, Dr. Bahadori completed a "Multiple Sclerosis Questionnaire" in which he indicated that the disease caused Plaintiff pain, fatigue, balance problems, tension (spasticity), and judgment problems, but opined that Plaintiff had a fair prognosis. Dr. Bahadori also indicated that Plaintiff was experiencing significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement of gait and station, primarily with left-sided gait disturbance. He opined that Plaintiff's pain, fatigue, and other symptoms were severe enough to constantly interfere with attention and concentration and that Plaintiff easily became irritable. Even so, Dr. Bahadori thought that Plaintiff was capable of low stress jobs. He further stated that Plaintiff did not have reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved in the multiple sclerosis process. There were no noted exacerbations of multiple sclerosis in the past year. Dr. Bahadori answered "N/A" to questions concerning how long Plaintiff could

8



stand and sit at one time, how long he could sit and stand/walk in an eight-hour day, how much he could lift and carry, and how often he could perform certain postural limitations. He did opine, however, that Plaintiff could only reach overhead eighty percent of the time; that his symptoms would require him to take unscheduled breaks of thirty to forty minutes duration four to five times daily during an eight-hour workday; that he needed to avoid all exposure to extreme heat, humidity, and hazards; and that Plaintiff would likely be absent from work more than four days per month due to impairments and medical treatment. Additionally, Dr. Bahadori indicated that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in Dr. Bahadori's evaluation. (R.pp. 474-479).

On October 29, 2013, a provider at the VA noted that Plaintiff was walking with a mild antalgic limp/gait and had been instructed in the use of a cane. (R.p. 495). On December 3, 2013, Plaintiff reported to a VA provider that he was experiencing heat intolerance, diaphoresis, and thyroid problems. He exhibited weakness in his upper and lower extremities. (R.pp. 506-508).

### Discussion

Plaintiff was only thirty-three years old at the time he alleges he became disabled, and thirty-six years old at the time of the ALJ's decision. He has a high school education and past relevant work experience as a hazardous material handler and a tool coordinator. (R.pp. 47, 75, 150, 193, 211). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

9



After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of multiple sclerosis, status post right small finger surgery; and degenerative disc disease (R.p. 40), he nevertheless retained the residual functional capacity (RFC) to perform sedentary work[2] with limitations that he could only occasionally perform postural movements and frequently handle and finger with his right upper extremity. Additionally, the ALJ found that Plaintiff was limited to simple, routine, repetitive tasks and should avoid concentrated exposure to temperature extremes, humidity, and hazards. (R.p. 42). At step four, the ALJ found that Plaintiff could not perform any of his past relevant work with these limitations. (R.p. 47). However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with this RFC, and was therefore not disabled during the time period at issue. (R.pp. 48).

Plaintiff asserts that in reaching this decision, the ALJ erred with respect to his findings regarding Plaintiff's RFC, failed to give proper weight to the opinions of Plaintiff's treating physicians, erred in relying on the testimony of the VE to establish that there were jobs in the economy that Plaintiff could perform, erred at step five of the sequential evaluation process by failing to follow the requirements of SSR 00-4p, and failed to carry the burden of proof at step five to show that there were a significant number of jobs in the national economy that Plaintiff could perform with

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[2] Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

10



his RFC. After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ erred by relying on the VE's testimony in reaching his decision, thereby requiring a remand of this case for additional review.

In response to the ALJ's hypothetical to the VE, the VE found that Plaintiff could perform the jobs of surveillance system monitor, weight tester, and food and beverage order clerk, all of which require a reasoning level of 3. (R.p. 76). See ECF No. 19-1 at 1-3. A reasoning level of 3 indicates that the job requires the applicant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and to deal] with problems involving several concrete variables in or from standardized situations." U.S. Dept. of Labor, Dictionary of Occupational Titles [DOT],[3] App. C § III, 1991 WL 688702 (Fourth Ed. Rev. 1991). However, the ALJ limited Plaintiff's RFC to simple, routine, repetitive tasks (R.p. 42); and numerous courts in this District have held that a limitation to simple or routine tasks is incompatible with a job requiring a reasoning level of 3. Cf. Massey v. Colvin, No. 12-3483-TMC, 2013 WL 6780575, at * 7-9 (D.S.C. Dec. 19, 2013)[adopting report and recommendation for remand where VE identified jobs with reasoning level 3 and ALJ limited Plaintiff to only simple tasks]. Christopherson v. Colvin, No. 15-4725, 2016 WL 7223283, at * 9 (D.S.C. Nov. 18, 2016) [Collecting cases], adopted by 2016 WL 7212785 (D.S.C. Dec. 13, 2016).

Therefore, pursuant to SSR 00-4p, some explanation should have been obtained from the VE for how Plaintiff could have performed the jobs identified by the VE with this reasoning level

---

[3]The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998)[emphasis added].

11



requirement.[4]  This would have allowed the ALJ to resolve any conflicts by determining if the explanation given by the VE was "reasonable and provides a basis for relying on the VE . . . testimony rather than the DOT information." Id.  However, although the ALJ instructed the VE to point out if the his testimony varied from information contained in the DOT (R.p. 75), the VE did not identify any inconsistency (see R.pp. 75-79), and thus the ALJ did not obtain a reasonable explanation for the conflict before relying on the testimony that Plaintiff could perform the three jobs listed by the VE. (R.pp. 48).  Indeed, the ALJ specifically stated in his decision that pursuant to SSR 00-4p he had "determined that the [VE's] testimony is consistent with the information contained in the [DOT]."  This was clear error under the facts of this case.

While there is a split of authority on this issue and the Fourth Circuit does not appear to have issued a decision addressing it,[5] numerous judges here in the District of South Carolina have

---

[4]SSR 00-4p provides:

> Occupational evidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

See SSR 00–4p, 2000 WL 1898704 (2000).

[5]However, in a recent unpublished case, the Fourth Circuit noted an apparent conflict between an RFC that limited the claimant to one-to-two step instructions and jobs identified by the VE which had a reasoning code of 2, which requires a claimant to understand detailed instructions. Henderson v. Colvin, 643 F. App'x 273, 276-77 (4th Cir. 2016).  In that case, the Fourth Circuit found that, because there was an apparent conflict between the VE's testimony and the DOT, the ALJ erred in relying on the VE's conclusory testimony and in failing to inquire further. Id. at 277-78 (citing Pearson v. Colvin, 810 F.3d 204, 209-10 (4th Cir. 2015) [Holding that an ALJ must independently identify conflicts between the VE's testimony and the DOT and that a VE's testimony that apparently
(continued...)



12

addressed this issue and found that decisions denying benefits under these facts should be remanded. Massey, 2013 WL 6780575, at * 7-8; see also Williams v. Colvin, No. 13-1563-JMC, 2015 WL 1423323, at * 2 (D.S.C. Mar. 27, 2015)[holding an apparent conflict existed between the jobs identified by the VE that had GED reasoning level of 3 and the limitation in the hypothetical to performance of only simple, routine, and repetitive tasks]; Collins v. Colvin, No. 13-76, 2014 WL 4536727, at * 7-8 (D.S.C. Sept. 11, 2014)[same](collecting cases); Graham-Willis v. Colvin, No. 12-2489-JMC, 2013 WL 6840465, at * 7 (D.S.C. Dec. 27, 2013)[holding an apparent conflict existed between the jobs identified by the VE that had GED reasoning level of 3 and the limitation in the hypothetical to performance of only simple tasks]; cf. Shivers v. Colvin, No. 12-3381, 2014 WL 1315183, at * 3-4 (D.S.C. March 28, 2014).

The undersigned finds the reasoning in these and other cases cited in Collins and Graham-Willis to be persuasive on this issue. Although the VE testified that Plaintiff's RFC would allow him to perform the jobs identified, he did not note the discrepancy between the requirements of these jobs as set forth in the DOT and the limitations the ALJ had placed on Plaintiff's RFC. Because the VE did not identify and resolve the conflict with respect to Plaintiff's ability to perform the jobs of surveillance system monitor, weight tester, and food and beverage order clerk, all three of which require a reasoning level of 3, even though Plaintiff was limited to simple, routine, repetitive tasks, the ALJ improperly relied on the VE's testimony in finding that Plaintiff could perform these jobs. See DOT Nos. 379.367-010 (surveillance system monitor), 1991 WL 673244; 539.485-010

---

⁵(...continued)
conflicts with the DOT only provides substantial evidence to support the ALJ's decision if the ALJ received an explanation from the VE explaining the conflict and determined both that the explanation was reasonable and provided a basis for relying on the VE's testimony rather than the DOT].



(weight tester), 1991 WL 674890;  209.567-014 (order clerk, food and beverage), 1991 WL 671794. Cf. Estrada v. Barnhart, 417 F.Supp.2d 1299, 1302 (M.D.Fla. Feb. 24, 2006); Lellhame v. Barnhart, 128 F. App'x 618, 619 (9th Cir. 2005); Christopherson, 2016 WL 7223283, at * 9.

Therefore, this action should be remanded for the ALJ to obtain VE testimony in compliance with SSR 00-4p with respect to any conflict between the reasoning level for the jobs identified by the VE and the limitations imposed by the ALJ in his RFC.  See generally, Pearson v Colvin, 810 F.3d 204 (4th Cir. 2015) [Discussing process for resolving of conflict].  With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim.  Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of obtaining VE testimony as to any conflict between the reasoning level for the jobs identified by the VE and the limitations already imposed by the ALJ in his RFC in light of all the evidence and applicable law, and for such further administrative action as is deemed necessary and appropriate. See Shalala v. Schaefer, 509 U.S. 292 (1993).



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 2, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

